AFFIDAVIT IN SUPPORT OF
COMPLAINT AGAINST WILLIE CHARLES ANDERSON, JR.

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since 02/22/2004. I am currently assigned to the Public Corruption Squad of the Washington, DC field office. I have training and experience in the enforcement of laws of the United States, including the preparation, presentation, and service of criminal complaints, and arrest and search warrants. My duties include investigation of various criminal allegations, including those involving corruption by public officials.

2. This affidavit is in support of a complaint against WILLIE CHARLES ANDERSON, JR. (hereinafter referred to as "ANDERSON") for Bribery in violation of Title 18, United States Code, Section 201(b)(2)(A). Anderson is a black male, with an approximate height and weight of 5'10" and approximately 185 pounds respectively, a date of birth of xxxxxxxx xx, 1948 and a Social Security Account Number of xxx-xx-xxxx. His home address is xxxx xxxxxxxxx xxxx xxxxx, Accokeek, Maryland 20607.

3. I am familiar with the facts and circumstances of this investigation. All relevant events described herein occurred in the District of Columbia. The information contained in this affidavit is based on my personal investigative activities and the interviews of witnesses. This affidavit does not contain all the information known to me or other investigative agents regarding this matter, but does, in my belief, include all the facts sufficient to support the issuance of a complaint.

4. At all relevant times herein, Anderson was a service provider for the District of Columbia Department of Motor Vehicles (hereinafter referred to as "DMV") and/or the District of Columbia Department of Health in Washington, D.C., providing court-ordered alcohol abuse treatment and awareness programs through the Bureau of Traffic Adjudication.

5. At all relevant times herein, included among Anderson's official duties as a service provider for DMV, was to provide treatment programs to defendants who had been charged and convicted in the Superior Court of the District of Columbia of either Driving while Under the Influence ("DUI") or Driving While Intoxicated ("DWI"), and provide the defendants with treatment letters of completion (hereinafter referred to as "letter") upon satisfactory completion of the program. Anderson would then forward a copy of the letter to DMV officials, allowing the defendant to apply for reinstatement of driving privileges, based upon satisfactory completion of the treatment program.

6. Since August, 2004, the FBI has been conducting a covert investigation, involving bribery of District of Columbia ("D.C.") DMV service provider Anderson, doing business as American Recovery Management Strategies, LLC (hereinafter referred to as "ARMS.") Anderson has served as a service provider for DMV and represents himself as a Reverend

and an alcohol and substance abuse treatment specialist with endorsements as a Certified Chemical Dependency Counselor (CCDC) and Certified Clinical Supervisor (CCS).  All conversations described below were recorded by FBI undercover employees (hereinafter referred to as "UCEs.")

7. Anderson's cellular telephone number is (202)746-3774.  According to AT&T Wireless, this telephone number is subscribed to by Willie C. Anderson, xxxx xxxxxxxxx xxxx xxxxx, Accokeek, Maryland 20607-3214.

8. Anderson's home telephone number is (301)283-2360.  According to Verizon of Maryland, this telephone number is subscribed to by Willie C. Anderson, xxxx xxxxxxxxx xxxx xxxxx, Accokeek, Maryland, 20607-3214.

9. Anderson has been observed driving a four door, 1999 Gray Cadillac Escalade, Maryland license plate 355M807.  According to the Maryland Motor Vehicle Administration, this vehicle is registered to Willie Charles Anderson, Jr., xxxx xxxxxxxxx xxxx xxxxx, Accokeek, Maryland 20607.

10. During recorded telephone conversations to these telephone numbers subscribed to and utilized by Anderson and in face to face meetings with FBI UCEs, Anderson twice solicited and accepted cash bribe payments of $725.00 each in exchange for providing falsified letters of completion for ARMS classes.  The FBI UCEs never attended, completed or participated in ARMS classes as claimed by Anderson.

11. On 09/30/2004, during a recorded telephone conversation with Anderson and an FBI UCE, Anderson acknowledged a twelve hour education minimum to satisfy DMV's requirement for defendants to apply for reinstatement of driving privileges.

12. On 11/05/2004, Anderson discussed, met with, solicited and accepted $350.00 in cash from an FBI UCE as a down payment toward a total payment of $725.00 in exchange for a falsified letter of completion for ARMS classes.  Anderson acknowledged that the FBI UCE would not attend any ARMS classes in exchange for this total payment of $725.00.  The following is an excerpt from a recorded conversation of 11/05/2004:

> *"...Anderson: Because I have the ability to do, I own the company, I don't have to ask nobody's permission to do whatever I say to you I'm gonna do.*
>
> *UCE: Uh huh.*
>
> *Anderson: I will do.*
>
> *UCE: Okay.*

*Anderson:* So.

*UCE:* So what can, what's your, what can you do? What can we do?

*Anderson:* I can do, I can do what you're willing to pay for to have done. If you say to me you want your letter..."

13. Anderson acknowledged that the falsified letter would be provided to the FBI UCE in exchange for cash, and the FBI UCE would not attend any of the required classes. The following is an excerpt from a recorded conversation with FBI UCE on 11/05/2004 with Anderson:

"...*UCE:* I can meet you to pick the, to pick the letter up but I can't meet you to go through a class.

*Anderson:* You can't do the class?

*UCE:* Right.

*Anderson:* Then you'd have to meet me in the morning to get your letter.

*UCE:* Okay.

*Anderson:* Then you just have to, you gotta have the, but I'm not gonna do it and get paid in pieces, I want to get all my money.

*UCE:* You'll get all your, you give me...

*Anderson:* At one time, if I agree to do it.

*UCE:* Um hum.

*Anderson:* Then I want my money, ah the only thing I would do with you is 725 and I will split it, give me half of it and I'll meet you to get your paperwork and fill out the form I give you in order for me to have the information to write your letter.

*UCE:* Uh huh.

*Anderson:* Okay? And then when I give you your letter, I want the rest of my money. If I don't get the rest of my money, you don't get your letter..."

14. Anderson and FBI UCE then agreed on the down payment amount as described in the following excerpt also from a recorded conversation of 11/05/2004:

> *"...UCE: Okay. So, just the 350 and bring the ah.*
>
> *Anderson: And bring the traffic record.*
>
> *UCE: Traffic record. Okay. No classes though right?*
>
> *Anderson: No*
>
> *UCE: Okay we can meet on Monday with the rest of it right?*
>
> *Anderson: Right..."*

15. On 11/08/2004, Anderson met with, solicited and accepted $375.00 in cash from a FBI UCE as the remaining bribe payment in exchange for a falsified letter of completion of ARMS classes addressed to the Department of Motor Vehicles, Alcohol and Drug Evaluation Unit, 301 C Street, NW, Washington, DC 20001. In this letter, dated 11/06/2004, Anderson states the following:

> *"Admissions Date    10/28/04*
> *Discharge Date     11/06/04*
> *Type of Discharge  Successful Completion*
>
> *Client was placed in our Level 1 Alcohol Education Track. Session topics included: scope and legalities of drinking driver problems, drinking drive (sic) patterns, and alcoholism as a disease from a bio-psycho social model and the adverse effects of chemicals in the body. Client has successfully completed the required program service plan. Prognosis at time of completion is favorable."*

16. Despite Anderson's statement that the "client has successfully completed the required program service plan" and an "Admissions Date of 10/28/04," the FBI UCE did not first meet with Anderson until 11/05/2004 and never attended any ARMS classes.

17. During a recorded conversation on 11/08/2004, Anderson acknowledged adjusting dates on the falsified letter of completion to give the appearance of a legitimate duration of two weeks for completion of ARMS classes or an accelerated program of twelve hours to be completed on Saturdays. The following is an excerpt from that recorded conversation:

> *"...Anderson: What I'm going to do is date it for completion on Saturday. I'll put tomorrow's date on it. So that it will be completed tomorrow. Because she knows that my classes are on Saturdays..."*

18. Also on 11/08/2004, during a recorded telephone conversation, after providing the

4

falsified letter of completion dated 11/06/2004, Anderson explained that District of Columbia officials would readily accept and rely upon the letter he provided for purposes of reinstatement of driving privileges, as described in the following excerpt:

> "...*UCE:* I was gonna make sure before I go up there, you gonna fax it up to her and stuff though right?
>
> *Anderson:* No you can do that with your copy, that's fine 'cause if she questions it, she'll, she'll know that it's legitimate.
>
> *UCE:* Okay, okay.
>
> *Anderson:* ...that it comes from me and if she does you can just tell her that you just spoke with me, she'll call me, she has my number..."

19. On 12/15/2004, Anderson discussed, met with, solicited and accepted a cash payment of $500.00 from FBI UCEs as a down payment for a second, falsified letter of completion for ARMS classes. Anderson acknowledged that this second FBI UCE would not attend any ARMS classes in exchange for this total payment of $725.00. Anderson again acknowledged the twelve hour requirement for ARMS classes and his additional steps to falsify the letter of completion to give the appearance of legitimacy by altering the dates of admission and course completion. The following are excerpts from recorded conversations of 12/15/2004:

> "...*Anderson:* We can do this by...twenty second.
>
> *UCE2:* Twenty second?
>
> *Anderson:* Which would be next Wednesday. See I need, if I am going to do twelve hours, right, have to be able to space that out.
>
> *UCE2:* Gotchya..."

20. On 12/15/2004, Anderson acknowledged that the falsified letter of completion that he would provide to UCE2 would be relied upon by the DMV officials for purposes of reinstatement of driving privileges. The following is an excerpt from recorded conversations of 12/15/2004:

> "...*UCE2:* The paperwork, I mean what you gonna put on it?
>
> *Anderson:* Right, right, you have to take that with you. The same thing I gave you.
>
> *UCE1:* Right, right, you said I, he cant go there before Wednesday though.

> *Anderson:* What happens is, next Wednesday morning, we can meet and I can give you the paperwork that's required to satisfy that and you can take that down. And you can say, we met that, then present your paperwork to them, then request a hearing.
>
> *UCE2:* When I go, I just ah, anything I need to fill out from you?
>
> *Anderson:* Well if you're in agreement with that then we can move forward, there's some forms you need to fill out.
>
> *UCE2:* Yeah I'll fill out the form for you.
>
> *Anderson:* What you have to do is, I have to draft your letter, so I need information from you.
>
> *UCE1:* You doin' this for twenty years, huh?
>
> *Anderson:* Yeah fortunately...
>
> *UCE2:* Once I get that Wednesday, how long does it take, they have to set a hearing.
>
> *Anderson:* And people have been able to walk in, do a walk in hearing...I would explain to them, uhm, the nature of your work, you know, requires that you be able to drive, that's all, and you are requesting a hearing, you've done everything you need to do, you know and that's where you are..."

21. On 12/15/2004, Anderson offered and accepted to provide a falsified letter of completion of ARMS classes to UCE2 at a cost of $725.00. Anderson agreed to accept $500.00 in cash during the first meeting with the remaining $225.00 to be collected by Anderson at the second scheduled meeting on 12/22/2004. Anderson again discussed the need to stage the hours of counseling requirement to make it appear legitimate. The following excerpt is from a conversation recorded on 12/15/2004:

> "...*Anderson:* Alright so, the escalated?
>
> *UCE2:* Uh huh.
>
> *Anderson:* We are going to do seven twenty five...what that means Tuesday, Wednesday morning you get your letter.
>
> *UCE2:* But today you want half today, right?

*Anderson:* You want to pay me five?

*UCE2:* I can do five.

*Anderson:* Do five today...and Tuesday, Wednesday morning when I meet you, you have two twenty five.

*UCE1:* How was St. Lucia?

*Anderson:* It was work...what happened out of that was I got some work in the Caymen islands also...See what I do when I go there is help them put drug and alcohol programs in their prisons.

*UCE1:* Bout West Virginia, how was that?

*Anderson:* And there I was putting help in with the church, trying to do a faith based drug and alcohol treatment program.

*UCE2:* Okay. I'll call you regardless...just to make sure we good with it.

*Anderson:* ...I'm going to do the paperwork today and get it done. So that all I need to do is see you Tuesday. The only reason I make you wait that long is, because I have to have, I gotta show from the time you had to have, lets say if you had gotten this letter last week, you know I'd have done it and sent it to your file, and back dated it for you. But because it's not...see what happens.

*UCE2:* Yeah.

*Anderson:* You have to acquire, you have to satisfy six hours, and I don't cram, you see what happens is your letter will be based on a review of your records, why I asked for your records...Okay, and just have my money when you come Wednesday.

*UCE2:* Two twenty five.

*Anderson:* And I will have your letter, and if you don't have my money, I don't want to hear no story about the dog died, the cat ran off with the kittens....Be a done deal..."

22. On 12/22/2004, Anderson discussed, met with, solicited and accepted a cash payment of $225.00 from FBI UCEs as the remaining payment for the second falsified letter of completion for ARMS classes. In exchange for this total payment of $725.00, Anderson provided a falsified letter of completion of ARMS classes to FBI UCEs addressed to the Department of Motor Vehicles, Alcohol and Drug Evaluation Unit, 301 C Street, NW,

Washington, DC 20001.  In this letter, dated 12/22/2004, Anderson states the following:

> *"Admissions Date      12/14/04*
> *Discharge Date       12/22/04*
> *Type of Discharge    Successful Completion*
>
> *Client was placed in our Level 1 Alcohol Education Track.  Session topics included:  scope and legalities of drinking driver problems, drinking drive (sic) patterns, and alcoholism as a disease from a bio-psycho social model and the adverse effects of chemicals in the body.  Client has successfully completed the required program service plan.  Prognosis at time of completion is favorable."*

23. As with the prior undercover transaction, at no time did the FBI UCE attend any ARMS classes as claimed by Anderson.

24. During a recorded conversation on 12/22/2004, Anderson met with FBI UCEs to provide the second falsified letter of completion of ARMS classes to the FBI UCEs and to accept the remaining cash payment of $225.00.  The following are excerpts from that recorded conversation:

> "...***UCE2:***  This the letter here?
>
> ***Anderson:***  It is.
>
> ***UCE2:***  Alright.  So I just take this to ah....
>
> ***Anderson:***  DMV
>
> ***UCE2:***  To DMV...you got me a receipt too.
>
> ***UCE2:***  Now, you, you know what I gotta have.  This all I gotta have to clear my record right?  They don't ask me any questions about the course do they?
>
> ***Anderson:***  No.  If they do, you just came to class, watched videos, talked about alcohol, look at the bottom of it.
>
> ***UCE2:***  Yeah.  I said, so I say, that I know I have a drinking problem, I'll clear up my act and, two twenty five right?
>
> ***Anderson:***  Right, but they're not gonna.
>
> ***UCE2:***  One, two, three, four, five, twenty, one-hundred, two-hundred, two twenty five.

> ***Anderson:*** *Unless you want to tip me now..."*

25. During the period from 09/30/2004 to 12/22/2004, WILLIE CHARLES ANDERSON, JR. acted as a DMV service provider and provided falsified letters of completion of ARMS classes to FBI UCEs on two occasions in exchange for U.S. currency. Anderson knew that these letters would be relied upon by DMV officials for the purpose of reinstatement of driving privileges. Anderson also knew that neither FBI UCE attended or participated in the ARMS counseling classes as claimed by Anderson.

26. Based upon the above circumstances, I submit that probable cause exists that WILLIE CHARLES ANDERSON, JR., being a public official, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept, things of value, to wit, United States currency, in return for him (a) being influenced in the performance of his official duties and (b) being induced to do and omit to do acts in violation of his official duties, in violation of Title 18, United States Code, Section 201 (b)(2)(A) and (C).

_____

Mark Allen
Special Agent, FBI

SWORN and SUBSCRIBED to before me
this \_\_\_\_ day of April 2005

_____

United States Magistrate Judge